Matter of McConihe agt. Exchange Bank of Lansingburgh.

## SUPREME COURT.

IN THE MATTER OF ISAAC MCCONIHE agt. THE EXCHANGE
BANK OF LANSINGBURGH.

*Power of the supreme court to order a referee to examine the affairs of a
moneyed corporation.*

The supreme court and a referee take the place of the former chancellor
and the master in chancery in ordering and making the examination
into the affairs of a moneyed corporation authorized by the act of 1838.

The management of corporations in the past has demonstrated the wisdom
of the provisions of our statutes which confer this power upon the
supreme court.

The court will see that the power conferred is not abused, but it will also
see that the examination is thorough and searching.

*Albany Special Term, March,* 1875.

MOTION on the part of the bank to vacate an *ex parte* order
made by the court at special term, appointing a referee to
examine into its affairs, under section 25 of chapter 260 of
the Laws of 1838, entitled "An act to authorize the business
of banking."

*E. Cowen,* for bank and motion.

*John H. Colby,* opposed.

WESTBROOK, *J.* — By section 199, page 561, of volume 2
of the fifth edition of the Revised Statutes, it is declared:
"Upon the application of creditors or shareholders of any
such association, whose debts or shares shall amount to $1,000,
and stating facts, verified by affidavit, the supreme court may,

Matter of McConihe agt. Exchange Bank of Lansingburgh.

in its discretion, order a strict examination to be made by a referee of all the affairs of such association, for the purpose of ascertaining the safety of its investments, and the prudence of its management; and the result of every such examination, together with the opinion of the referee and of the court thereon, shall be published in such manner as the court shall direct, who shall make such order in respect to the expenses of such examination and publication as they may deem proper."

It is apparent that if the revisers and publishers of the fifth edition of our statutes have, in the section just quoted, given the true status of the legislation of this state, then this order, in its general scope at least, even though objectionable in some of its details, was a proper one to be made. It is claimed, however, by the moving party that the section as given does not contain the law as it is, because, first, the original act of 1838 (*chap*. 260, *sec*. 25) conferred the power to order the examination, not upon the late court of chancery, but upon the chancellor as an officer, and that the judiciary act of 1847 did not vest the powers which the late chancellor possessed in the supreme court or in its judges; second, that the original act before referred to required the examination to be made by a master of the late court of chancery, and that whilst the office of master has been abolished, no provision has been made by the law to cause the examination which the statute contemplates to be made by a referee; and, third, that the various statutes which have since been passed, providing for an examination into the affairs of a banking association by other officers, practically repeal the provision of the statute which authorized the examination by a master in chancery, upon the order of the chancellor.

By reference to the original statute before mentioned (*chap*. 260, *Laws of* 1838, *sec*. 25), it will be seen that it is identical in language with that quoted from the fifth edition of the statutes, except that where the words "supreme court" or "court" occur in the latter, the word "chancellor"

is used in the former, and also that the latter has substituted the word "referee" for "one of the masters of his court," and for "master," wherever the latter words occur in the old statute. The old statute, in short, authorized "the chancellor" to "order a strict examination to be made by one of the masters of his court," and directed the publication of the result of such examination, "with the opinion of the master and of the chancellor thereon," in "such manner as the chancellor shall direct."

It will be observed that the action pointed out by this statute was to be under the order of the chancellor, and not of the court of chancery. It is true that the former was the judge who presided over the latter, and that the application would be granted or denied by the same individual, if made to either; but yet the distinction between an application to a court or to an officer is one well recognized and understood. The application, then, was to the chancellor as an officer, and not to the court.

By the sixteenth section of chapter 280 of the Laws of 1847, entitled "An act in relation to the judiciary," the powers and jurisdiction of the court of chancery were transferred to the supreme court; and it was further declared that "the justices of said court shall possess the powers and exercise the jurisdiction now possessed and exercised by the justices of the present supreme court, chancellor, vice-chancellors' and circuit judges, so far as the powers and jurisdiction of said courts and officers shall be consistent with the constitution and provisions of this act." Language cannot more clearly express any thought than this statute does, in conferring the powers and jurisdiction of the court of chancery upon the supreme court and those enjoyed and exercised by the chancellor upon the justices of the supreme court (*See Wilcox* agt. *Wilson,* 14 *N. Y.,* 575; *the prevailing opinion of* MITCHELL, *J., page* 579, *and dissenting opinion of* WRIGHT, *J., both of whom concur in our construction of the judiciary act in this respect*). If, however, the section of the judiciary act we have referred

to went no farther than to clothe the present supreme court with the powers and jurisdiction of the court of chancery, and its justices with those of the chancellor, this order would fail for two reasons : First, it was made by the court and not by one of its justices as such ; and, second, section 77 of the judiciary act authorizes courts and not officers to order references "in any suit or proceeding to suitable person or persons," where a reference had formerly been "to any clerk, master in chancery or referee." In other words, it must be shown that the judiciary act authorized this court, as a court, to order the investigation, which the chancellor could direct, before it could order the examination. which the master formerly made to be conducted by a referee. Has the statute conferred the power upon the court ?

Upon the argument of the motion at special term, from the hasty reading of section 16 of the judiciary act before referred to, I was of the impression that the powers of the late chancellor were only lodged in the justice of this court, and that, consequently, the order must fail for the reason that it was granted by the court; and that, even when granted by a judge as such it must fail, because the court alone could appoint a referee instead of a master. A more careful reading of the section, however, induces me to think that the revisers of the fifth edition are right in the interpretation and reading of the section quoted in the beginning of this opinion, by which the supreme court and referee take the place of the chancellor and the master in ordering and making the examination into the affairs of a moneyed corporation authorized by the act of 1838.

Section 16 of the judiciary act not only contains the clauses before referred to transferring the powers and jurisdiction of the late court of chancery to the supreme court, and those of the chancellor to its justices, but also this: "And all laws relating to the present supreme court and court of chancery, or any court held by any vice-chancellor, and the jurisdiction, powers and duties of said courts, the proceedings therein

and the officers thereof, their powers and duties, shall be applicable to the supreme court organized by this act, the powers and duties thereof, the proceedings therein and the officers thereof, their powers and duties, so far as the same can be so applied and are consistent with the constitution and the provisions of this act."

This part of the section makes all laws prescribing "the jurisdiction, powers and duties" of the courts therein enumerated, of which the court of chancery was one, and, also, those in regard to "the officers thereof, their powers and duties" "applicable to the supreme court organized" by said act, "the powers and duties thereof, the proceedings therein and the officers thereof, their powers and duties." That is to say, the powers and jurisdiction of the old supreme court, the court of chancery and of "the officers thereof" are lodged and vested in the present supreme court and its officers. The chancellor was an officer of the court of chancery, the highest one undoubtedly, but, nevertheless, the officer who presided over the court; and as such he had the power and authority to order an examination of like character with the one directed by this court; and as that power with all others enjoyed by him was lodged in this court, it follows that this court, acting as a court, could order a referee to make the examination; and that such referee, when appointed, would, by virtue of the same statute, possess the power of a master, provided the judiciary act has made provision for such reference.

Having reached the conclusion that the power which the late chancellor possessed by virtue of his office is vested in the supreme court as such, as well as in its justices as such, it remains to be shown that a referee can take the place of the late master in chancery in making this examination authorized by the banking act.

The seventy-seventh. section of the judiciary act does not limit the powers of "courts of record" to the appointment of referees, in lieu of the old masters, to suits only, but confers it in proceedings also. The language is: "On and after

.the first Monday of July next courts of record may, by an order to be entered in any suit or proceeding at law or equity, refer any matter," &c. This application was "a proceeding at law," because it is one created by statute, and is therefore such an one as is covered by the language employed.

In the disposition of the remaining objection to the order that the various laws since passed vesting the power of examination in other officers, have repealed the statute upon which this order was founded, two principles must be borne in mind : First, repeals by implication are not favored in the law ; and, second, the subsequent statute must be inconsistent with the former, or some intention to abrogate the older statute must appear.

It is not claimed that there has been any express repeal. When the statute authorizing the chancellor to order such an examination was passed, the old safety-fund banks were subject to examination by three officers known as bank commissioners. Chapter 363 of the Laws of 1840 whilst making the institutions organized under the Laws of 1838 (the act which authorizes the examination by order of the chancellor), "subject to the inspection and supervision of the bank commissioners," does not, in terms or by implication, abridge or take away the power which the chancellor possessed. So, also, chapter 218 of Laws of 1843, which abolished the office of a bank commissioner and allowed the comptroller "to appoint a special agent to examine the affairs of such bank," does not abrogate the power of the chancellor ; nor does chapter 164 of Laws of 1851, which creates the office of superintendent of the banking department, accomplish that result. These provisions are only cumulative. The creation of a new tribunal, which can exercise the powers previously enjoyed by another, does not deprive the latter of its jurisdiction without express words declaring that intent, or containing provisions which are plainly inconsistent with the operation of the old (*See many cases cited in* 5 *Abbott's N. Y. Digest, page* 607).

Matter of McConihe agt. Exchange Bank of Lansingburgh.

It is further objected that the order contains provisions which are objectionable, because beyond the power conferred upon the court. In the discussion of this objection, it should be borne in mind that whenever power is given to do an act, a grant is also made of the right to exercise the means which will enable the power to be fully exerted. The statute declares that the court may "order a strict examination to be made by a referee of all the affairs of such association for the purpose of ascertaining the safety of its investments, and the prudence of its management." If the examination is to be limited to the bare inspection of books and papers, how could such examination be "strict." · The power to swear witnesses and compel their attendance is necessary for the proper discharge of the duty, and if this bank is but a continuation of a previous corporation, the thorough discharge of the duty necessarily involves the right to examine into its former doings whilst existing under another organization, that its present status may be ascertained.

It may be observed in conclusion that the management of corporations in the past has demonstrated the wisdom of the provisions of our statutes which confer this power upon the supreme court. If the conduct of this bank has been honest and fair, it need not fear the light of an impartial investigation. The court will see that the power conferred is not abused, but it will also see that the work is thorough and searching.

The motion to vacate the order is denied, but as the questions are novel, there will be a stay of all proceedings to enable the bank to appeal, if it shall be so advised.

No reference has been made in this opinion to the proofs upon which the order of examination was founded, nor to any affidavits of papers affirmatively tending to show that the order should not have been granted. No point upon them was made upon the argument, and the counsel for the motion rested it entirely upon the questions which have been discussed.

Matter of McConihe agt. Exchange Bank of Lansingburgh.

Neither is there any opinion expressed upon the question whether the Exchange Bank of Lansingburgh is so far an existing corporation as to make the proceedings ordered in this case proper. Its exact status has been disclosed in other and different proceedings, and the moving papers have not been so drawn as to present that question. When the motion was made, however, the counsel for the bank distinctly disclaimed any intent to use, or to have his moving papers considered, and as they have thus been withdrawn from my consideration, and no point whatever made upon that ground, it has been left untouched, and only those questions considered which were raised.